```
 1
 2
 3
 4
 5
 6
 7                    UNITED STATES DISTRICT COURT
 8                   CENTRAL DISTRICT OF CALIFORNIA
 9                          WESTERN DIVISION
10
11  CHRIS SHELTON,                  )  No. CV 09-06316-VBK
                                    )
12              Plaintiff,          )  MEMORANDUM OPINION
                                    )  AND ORDER
13       v.                         )
                                    )  (Social Security Case)
14  MICHAEL J. ASTRUE,              )
    Commissioner of Social          )
15  Security,                       )
                                    )
16              Defendant.          )
                                    )
17
```

18      This matter is before the Court for review of the decision by the
19 Commissioner of Social Security denying Plaintiff's application for
20 disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have
21 consented that the case may be handled by the Magistrate Judge.  The
22 action arises under 42 U.S.C. §405(g), which authorizes the Court to
23 enter judgment upon the pleadings and transcript of the record before
24 the Commissioner.  The parties have filed the Joint Stipulation
25 ("JS"), and the Commissioner has filed the certified Administrative
26 Record ("AR").
27      Plaintiff raises the following issues:
28      1.   Whether  the Administrative Law Judge ("ALJ") properly

            considered the evaluating physician's initial assessment; and

    2.    Whether the ALJ properly developed the record.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

## I

## THE ALJ PROPERLY EVALUATED PLAINTIFF'S
## MENTAL STATUS AND FUNCTIONAL LIMITATIONS

In Plaintiff's first issue, he asserts that the ALJ failed to properly consider the evaluation of his treating physician, Dr. Hernandez, of the Los Angeles County Department of Mental Health, Compton Mental Health Unit. (JS at 3, et seq., AR at 299-310, hereinafter "Compton Mental Health.") Plaintiff notes his diagnosis of schizoaffective disorder, bipolar type, major depression, alcohol dependence, and a Global Assessment of Function ("GAF") score of 55. (JS at 3, citing AR at 307. Further, Plaintiff notes that the ALJ should have considered the "Adult Initial Assessment" of Compton Mental Health, which indicated, in part, that Plaintiff has a dysphoric and irritable mood with blunted affect, and exhibited command and persecutory auditory hallucinations, known to begin at age 13. Plaintiff was found to have impaired concentration and thought blocking, excessive worry, apathy, and displayed inappropriate crying. (AR 306.)

//
//

**A.     The ALJ's Decision.**

The ALJ summed up his analysis of Plaintiff's mental impairments in the following portion of his opinion:

> "Regarding [Plaintiff's] mental impairments, about a year ago, as per [Plaintiff's] testimony and as evidenced by the record, [Plaintiff] was abusing drugs.  The evidence of suicidal and homicidal ideation which led to [Plaintiff's] hospitalization due to psychotic symptoms occurred primarily because he was abusing drugs.  Absent substance abuse and under treatment however, the record shows [Plaintiff] is stable and functional, with few if any restrictions.  Indeed some treatment notes indicate no work restrictions were recommended, while others indicate [Plaintiff] was stable and doing well, without any medication side effects."

(AR 15, exhibit citations omitted.)

Dr. Hernandez' report is dated April 19, 2005. (AR 307.)  The ALJ relied upon evidence developed later in time.  This included the report of consultative examining psychiatrist Dr. Yang (AR 275-78), and State Agency psychiatrist Dr. McDowell (AR 279-92).  Dr. Yang performed a consultative examination on August 29, 2007, in which he diagnosed Plaintiff with polysubstance dependence and anxiety disorder. (AR 277.)  There was no evidence of any cognitive deficits, perceptual disturbances, or delusional disorders. (AR 278.) Plaintiff was able to focus his attention adequately. (AR 278.)  It was noted that Plaintiff indicated he has had problems with an addiction to alcohol, cocaine, PCP and marijuana, but that he has been "clean" for over eight months, having attended a 12-step program. (AR 276.)

1    After reviewing the record, Dr. McDowell completed a Psychiatric Review Technique Form ("PRTF") on September 17, 2007. (AR 279-289.) This resulted in an assessment of only mild functional limitations in daily living and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and insufficient evidence of repeated episodes of decompensation. (AR 287.) The ALJ adopted Dr. McDowell's analysis regarding the extent of limitations in each of these four areas. (AR 12-13, see infra.) The ALJ noted that this residual mental functional capacity (see AR at 13, ¶ 4), was supported by Dr. Yang's consultative examination and opinion, and affirmed by two State Agency reviewing medical sources. The ALJ noted that he assigned the greatest weight to Dr. Yang's opinion, and the State Agency psychiatrists. (AR 16.)

The ALJ did acknowledge Plaintiff's treatment at the Compton Mental Health Center, by Dr. Hernandez. (See AR at 12, 15.) Plaintiff's specific complaint, however, is that the ALJ failed to provide specific and legitimate reasons to reject Dr. Hernandez' opinion.

**B.   Applicable Law.**

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at

subsequent steps unless the mental impairment is found to be not severe at Step Two.  See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension.  Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.  Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the

quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

The GAF scale is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (See 20 C.F.R. §§416.905, 416.920(c)(2006).)

GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the severity assessment set forth in Social Security regulations. (See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 33 (4th Ed. 2000).

### C. **Analysis**.

The ALJ carefully distinguished the various determinations of Plaintiff's mental functional limitations based upon whether, at the time he was examined or tested, he was experiencing the effects of alcoholism and/or drug dependence. With regard to the records of Compton Mental Health, and Dr. Hernandez, in 2005, the ALJ noted that, at that time, Plaintiff was excessively utilizing alcohol and drugs, and that the mental functional limitations which were diagnosed were integrally intertwined with his use of these substances. As the ALJ noted, Plaintiff's excessive use of alcohol and drugs continued into late 2006, when he self-reported to Centinela Hospital Medical Center and toxicology reports were positive for cocaine and marijuana. (AR 11, citing AR at 213-16.) A few days later, at the Penn Mar

Therapeutic Center, Plaintiff was treated for a diagnosis of psychotic disorder, NOS. He admitted that he had increased his abuse of alcohol, marijuana, and cocaine. The ALJ observed that, "The [Plaintiff's] condition was noted to have steadily improved during admission until he was no longer experiencing hallucinations, paranoid, suicidal or homicidal ideation, and he had no side effects from the medication." (AR 11.)

Thus, Dr. Yang's psychiatric evaluation on August 29, 2007 can be placed in better perspective vis-a-vis Plaintiff's intake of alcohol and drugs. At that time, Plaintiff reported that he had been "clean" (presumably, of alcohol and drugs) for over eight months, and had attended a twelve-step program. Plaintiff was working, doing odd jobs such as laying tile and remodeling houses, and was taking psychiatric medications, which Dr. Yang indicated were helpful. He attended church, ran errands, and had a good relationship with friends. (AR 278.) Dr. Yang concluded that Plaintiff had no evidence of cognitive deficits, perceptual disturbances or delusional disorders. He was fairly groomed, and seemed capable of taking care of his own needs. He was able to focus attention adequately, was able to follow one- and two-part instructions, could adequately remember and complete simple and complex tasks, was able to tolerate stress inherent in the work environment, maintain regular attendances, and work without supervision. Further, Dr. Yang assessed that Plaintiff was able to interact appropriately both with himself and staff, and he surmised that Plaintiff would be able to interact in the same manner with supervisors, co-workers, and the public in the workplace. (AR 278.)

On reviewing this record, the State Agency psychiatrist, Dr. McDowell, completed a PRTF on September 17, 2007 (AR 279-89), and

observed the level of mental functioning in the four relevant areas which the Court has previously summarized in this decision. The ALJ relied upon these opinions in finding that Plaintiff did not have a mental disability. (See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)(the opinions of non-treating or non-examining physicians may be relied upon as substantial evidence when they are consistent with independent clinical findings or other evidence in the record)).

In sum, while the ALJ's reference to the opinions of Dr. Hernandez in 2005, a period when Plaintiff was abusing drugs and alcohol, may not have been accompanied by a specific or lengthy discussion, the Court cannot disagree with the correctness of the ALJ's analysis, which correlated Plaintiff's mental problems with his excessive use of alcohol and drugs, and conversely, correlated his improved mental status with his cessation of the use of these substances. Even if, hypothetically, Plaintiff might have been considered disabled based on mental health reasons during part of the 2005 period covered by the Compton Mental Health Center records, the fact that his mental functioning was integrally related to his abuse of alcohol and drugs would have vitiated any finding of disability, based on applicable regulations.

For the foregoing reasons, the Court finds no error with regard to the ALJ's determination of Plaintiff's mental status and functioning.

**II**

**THE ALJ DID NOT FAIL TO PROPERLY DEVELOP THE RECORD**

In Plaintiff's second issue, he asserts that the ALJ failed to properly develop the record with regard to a June 27, 2008 letter from

1  Rose Marie Andrews, OTR, from the Los Angeles County Department of
2  Mental Health.  In that letter (see AR at 331), Ms. Andrews,
3  denominated a "Vocation Services Coordinator" (Id.), commented that
4  Plaintiff has been a patient, or client, at Compton Mental Health
5  since February 2005, that he has suffered from mental health problems
6  all his life, and that he remains in dire need of treatment and other
7  support services.  Ms. Andrews opined that Plaintiff has a chronic,
8  permanent mental disorder which requires persistent medical treatment
9  and other living assistance, that he is not able to perform for a
10 compensated job, be productive, concentrate, focus, follow directions,
11 or process multiple step information.  Finally, she opined that
12 Plaintiff is not able to generate enough income to provide for
13 himself. (Id.)
14      The ALJ rejected Ms. Andrews' opinion, noting that she failed to
15 indicate the nature and extent of her relationship with Plaintiff, and
16 that as a Vocational Services Coordinator, "she appears to lack any
17 form of specialization to give an opinion regarding the [Plaintiff's]
18 mental health history, his diagnoses, his current ability to function
19 mentally, and his sustained ability to perform work-related
20 functions." (AR 16.)
21      Plaintiff's counsel argues that the ALJ should have developed the
22 record to determine what treatment relationship Ms. Andrews had with
23 Plaintiff.
24      It is apparent that Ms. Andrews did not have an ongoing treatment
25 relationship with Plaintiff, because her descriptions of Plaintiff's
26 mental infirmities, along with her opinions about Plaintiff's
27 inability to work, or support himself, are totally at odds with
28 concurrent actual reports of mental health professionals contained in

the AR, which are based upon actual examinations. For example, when Plaintiff was examined by Dr. Yang on August 29, 2007, he was working doing odd jobs, was able to eat, dress and bathe independently, was able to manage money, take bus transportation, visit with family and friends, and otherwise function appropriately. (AR 276-77.) In addition, Ms. Andrews' assessment is entirely inconsistent with the reports of Plaintiff's functioning at various therapeutic and rehabilitation centers during 2007. As the ALJ noted, on October 26, 2007, Valerie R. Ramirez, a consultative medical source, reviewed reports of these facilities and providers in 2007, and reported that, "[Plaintiff] does not need reminders, cook [sic], cleans, uses public transportation, shops, handles money, goes to church, walks 1/2 mile." (AR 316.)

Based on the foregoing, the Court does not deem that the ALJ erred by failing to follow up with development of the record to determine what, if any, treatment or professional relationship Ms. Andrews had with Plaintiff. Indeed, Ms. Andrews' opinion does not appear to be based upon any professional medical relationship with Plaintiff, and, in any event, it is completely at odds with the uniformly consistent reports of the other doctors and medical professionals summarized in the ALJ's decision.

Based on the foregoing, the Court finds no error with regard to Plaintiff's second issue.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: May 24, 2010                    /s/
                                       VICTOR B. KENTON
                                       UNITED STATES MAGISTRATE JUDGE